### In Re the Matter of Tracy Lee ELGARD, Petitioner, Respondent,

v.

### Cheryl Elaine DUDLEY, Appellant,

and

### Jan Morrison, Intervenor, Respondent.

### No. C3-90-2715.

Court of Appeals of Minnesota.

June 11, 1991.

---

Robert J. Lawton, St. Paul, for Tracy Lee Elgard.

John J. Todd, West St. Paul, for Cheryl Elaine Dudley.

Ragnhild Anne Westby, St. Paul, for Jan Morrison.

Considered and decided by FOLEY, P.J., and HUSPENI and AMUNDSON, JJ.

## OPINION

FOLEY, Judge.

Appellant Cheryl Elaine Dudley challenges the trial court's application of Minn. Stat. § 518.18 (1990) to her motion for modification of joint physical custody and the trial court's refusal to hold an evidentiary hearing. We reverse and remand.

## FACTS

Dudley (now age 24) and respondent Tracy Lee Elgard (now age 29) met in a halfway house when they were being treated for chemical dependency. They are the unmarried parents of a son who was born

on September 18, 1983. In 1987, they broke off a live-in relationship.

Dudley and Elgard each make allegations about the other's past and present involvement with chemical dependency. Additionally, by affidavit, Elgard's mother, respondent Jan Morrison, has corroborated Dudley's allegations that Elgard physically assaulted Dudley when Dudley and Elgard lived together.

Morrison has been a part of the child's life since he was born. When Elgard has custody, the child often stays with Morrison, who lives near Elgard's home. Morrison has also provided advice and counseling to Dudley and Elgard.

On March 5, 1987, Dudley admitted service by Elgard of his summons and complaint to determine paternity. That same day, Dudley and Elgard stipulated in writing that (1) Elgard fathered Dudley's son, (2) Dudley and Elgard would have joint legal and physical custody of the child and (3) the child would live with Dudley for three consecutive days and with Elgard for the next three consecutive days. Dudley waived her right to counsel and agreed Elgard could proceed by default. A judgment and decree approving the stipulation was entered on July 21, 1987.

On July 5, 1988, Dudley filed a notice of motion for physical custody to be solely with her and for child support. On August 17, 1988, Elgard filed a notice of motion for physical custody to be solely with him and for child support. Morrison filed a notice of motion to intervene on August 23, 1988.

Hearing was had on August 30, 1988. On September 1, 1988, the trial court filed an order finding:

That the parties have * * * agreed that there has been no showing of integration of the child into one of the parties' homes and there has been no written agreement regarding a change of custody and therefore the only criteria for change of custody will be endangerment.

Pursuant to the parties' stipulation, the trial court reserved ruling on Morrison's motion to intervene and continued the hearing on the cross-motions for change of custody.

The trial court ordered custody and chemical dependency evaluations. After another hearing, the trial court filed an order on January 5, 1989 that Elgard and Dudley cooperate in completion of the chemical dependency evaluations. A custody evaluation was completed on April 24, 1989.

Morrison filed a notice of motion to be admitted to the proceedings consistent with the custody evaluation on September 8, 1989. Morrison also requested an order establishing the school district for the minor child and an order for an evidentiary hearing on Elgard's custody motion. On September 8, 1989, the trial court filed an ex parte order that the child attend elementary school in the district in which Morrison lives pending an October 2, 1989 hearing.

On September 21, 1989, Dudley filed a notice of motion to amend the July 21, 1987 judgment and decree to give her sole custody and child support. Dudley also sought to have the child attend school where Dudley lives, asserting that attendance at that school had been prevented by an ex parte order issued at Morrison's request when she was not yet a party to the proceedings.

The trial court ordered on October 5, 1989 that the October 2 hearing be continued to October 11 because Morrison's attorney was in trial on another matter. The trial court heard the pending motions on October 11, 1989.

The trial court issued an order on October 12, 1989 granting Morrison's motion to intervene, finding there must be an evidentiary hearing, ordering further custody and chemical dependency evaluations to include assessment of Morrison and ordering that the child stay in school in Morrison's school district. The trial court also ordered Elgard's custodial time be conditioned on his remaining chemically free for 12 hours prior to and during custody. It directed the assignment office to place the issue of custody on for a two-day trial.

On November 9, 1989, the case was reassigned to a different trial court judge. An order was filed on February 5, 1990 scheduling a custody pretrial conference for

March 6, 1990. The matter was rescheduled several times due to the death of Morrison's brother and scheduling conflicts. A notation dated May 31, 1990 in the trial court file index indicates an order regarding the pretrial conference was filed but the order is missing from the file. On June 4, 1990, an assignment office notice of hearing for July 5, 1990 was filed. The hearing was subsequently continued several times because of scheduling conflicts.

Dudley filed an amended motion to vacate the decree, or, in the alternative, to amend the custody and support provisions of the decree on September 4, 1990. On September 6, 1990, Elgard filed a notice of motion to strike the evidentiary hearing set for September 18, 1990 on the ground Dudley had not made out a prima facie case of endangerment for change of custody.

A hearing was held on November 26, 1990. On November 30, 1990, an order was filed dismissing the custody motions and denying all other motions. Dudley appeals.

### ISSUES

1. Did the trial court err in finding Dudley's motion for a change in custody was barred by Minn.Stat. § 518.18(b) and (c)?

2. Did the trial court err in finding Minn.Stat. § 518.18(d) rather than Minn. Stat. § 518.17 (1990) applies in modifications of joint physical custody?

### ANALYSIS

■ A trial court's determination in custody matters will not be reversed unless an abuse of its broad discretion is found. *Englund v. Englund*, 352 N.W.2d 800, 802 (Minn.App.1984). An abuse of discretion will be found if the trial court makes findings unsupported by the evidence or improperly applies the law. *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn.1988).

■ 1. The trial court correctly found Dudley's original motion was brought "less than two years after custody was originally determined." The trial court erred, however, in finding that, under Minn.Stat. § 518.18(b) and (c), such a motion can go forward only if there has been an interference with visitation or the present environment may endanger the child's physical or emotional health or impair the child's emotional development.

Minn.Stat. § 518.18 provides in pertinent part:

(a) Unless agreed to in writing by the parties, no motion to modify a custody order may be made earlier than one year after the date of the entry of a decree of dissolution or legal separation containing a provision dealing with custody, except in accordance with paragraph (c).

(b) If a motion for modification has been heard, whether or not it was granted, unless agreed to in writing by the parties no subsequent motion may be filed within two years after disposition of the prior motion on its merits, except in accordance with paragraph (c).

(c) The time limitations prescribed in paragraphs (a) and (b) shall not prohibit a motion to modify a custody order if the court finds that there is persistent and willful denial or interference with visitation, or has reason to believe that the child's present environment may endanger the child's physical or emotional health or impair the child's emotional development.

It can be seen that (a) prohibits making a motion sooner than one year after an initial custody determination without satisfying the requirements of (c). Subsection (b) governs when a motion is filed sooner than two years after disposition of a prior motion on its merits.

The trial court appears to have merged (a) and (b). Only (a) applies, however, because Dudley's motion was the first that would have been heard on the merits after the initial custody determination. Under (a), the time limitation is one year, not two years.

Dudley did file her initial motion on July 5, 1988, or 16 days short of a year from the entry of the custody decree on July 21, 1987. Subsection (a), however, mandates that the requirements of (c) have to be satisfied when a party *makes* a motion

sooner than a year. The hearing was on August 30, 1988, or more than a year after the initial custody determination. Therefore, Dudley made her motion more than a year later. Furthermore, considering the trial court did not finally adjudicate the motion until November 1990, or more than three years after the initial determination, it would exalt form over substance to find Dudley had to satisfy (c).

We conclude, therefore, that the trial court erred in determining Dudley had to satisfy Minn.Stat. § 518.18(c) in order to make her motion.

■ 2. We also agree with Dudley that the trial court erred in finding Minn.Stat. § 518.18(d) rather than Minn.Stat. § 518.17 applies in modifications of joint physical custody. Minn.Stat. § 518.18(d) provides:

If the court has jurisdiction to determine child custody matters, the court shall not modify a prior custody order unless it finds, upon the basis of facts that have arisen since the prior order or that were unknown to the court at the time of the prior order, that a change has occurred in the circumstances of the child or *the custodian* and that the modification is necessary to serve the best interests of the child. In applying these standards the court shall retain *the custodian* by the prior order unless:

(i) *the custodian* agrees to the modification;

(ii) the child has been integrated into the family of the petitioner with the consent of *the custodian*; or

(iii) the child's present environment endangers the child's physical or emotional health or impairs the child's emotional development and the harm likely to be caused by a change of environment is outweighed by the advantage of a change to the child.

(Emphasis added.)

In *Klecker v. Klecker*, 454 N.W.2d 264, 266 (Minn.App.1990), this court noted

the inherent inconsistency in applying Minn.Stat. § 518.18(d) to a joint physical custody arrangement where neither parent is, in fact, the primary physical custodian * * *.

This court also cited the case of *Sydnes v. Sydnes*, 388 N.W.2d 3, 6 (Minn.App.1986):

We agree with the observation of the *Sydnes* court that in cases of actual joint physical custody, the focus must remain where the legislature placed it: on the best interests of the minor child as those best interests may be determined by application of section 518.17.

*Klecker*, 454 N.W.2d at 267. We concluded that "modification of such joint physical custody was not contemplated by this statute." *Id.* at 266.

Elgard contends *Klecker* only found Minn.Stat. § 518.18(d)(i), (ii) and (iii) not to apply to joint physical custody cases. This is a misreading of *Klecker*, however. *See id.* at 266 (noting the introductory language of (d) refers to "*the* custodian").

Our holding that Minn.Stat. § 518.18(d) does not apply to joint physical custody cases does not mean that parties would be free to bring motion after motion for change of custody. Our analysis does not suggest that Minn.Stat. § 518.18(a) and (b) are inapplicable to joint physical custody cases, and those provisions would limit the bringing of motions. Additionally, when parties have joint physical custody of a child, a change in custody does not have the same effect on the stability of a home environment as does uprooting the child from one home to another when sole custody is transferred from one party to another.

We find that Minn.Stat. § 518.18(d) does not apply to joint physical custody cases and should not be applied here. In joint physical custody cases, trial courts should utilize the best interests of the child standard found in Minn.Stat. § 518.17.

Elgard also argues that Dudley stipulated in August 1988 that endangerment to the child must be found for a change in custody. That stipulation, however, predated *Klecker*. Furthermore, on October 12, 1989, the first trial court judge ordered that an evidentiary hearing be held.

Because we have held the second trial court judge misapplied the law in refusing to hold an evidentiary hearing, we remand

for an evidentiary hearing as previously ordered in trial court.

 It is regrettable this case has had such a protracted journey through the trial court's administrative labyrinth. Motions concerning child custody should be resolved promptly, and, on remand, this matter should be given prompt attention.

### DECISION

The trial court erred in refusing to conduct an evidentiary hearing on Dudley's motion to modify custody. On remand, the trial court must conduct an evidentiary hearing and determine the issue of custody by using the best interests of the child standard found in Minn.Stat. § 518.17. For the sake of the child, the hearing should be held with dispatch.

Reversed and remanded.

HUSPENI, Judge (concurring specially).

I agree with the result reached by the majority and with its analysis of applicable case law. However, I am concerned about dicta in the majority opinion referring to possible continued applicability of Minn. Stat. § 518.18(a)–(b) (1990).[1] As stated in the concurring opinion in *Keith v. Keith*, 429 N.W.2d 276 (Minn.App.1988) (Huspeni, J., concurring specially):

> [I]t appears that grants of joint physical custody, with no further specification or scheduling, are often ordered or stipulated so as to avoid making a difficult decision, or in the optimistic hope that "things will work out."
> Often things don't "work out." When they don't, the adverse effects on a child can be swift. However, an attempt by the trial court to satisfy the strict requirements of Minn.Stat. § 518.18 in such a setting may fail.

*Id.* at 279.

In a true joint physical custody arrangement, I believe the best interests of chil-

dren will be served only by allowing parents to seek court assistance without having to first meet the time constraints of section 518.18(a) and (b). I foresee no flood of custody litigation resulting from abrogation of such time restraints. If the court once vests primary physical custody in one parent, all provisions of section 518.18 will then apply and continue to apply to the custodial arrangement which, I believe, was envisioned by the framers of this statute.

---

1. Section 518.18(a) and (b) read in relevant part:
   (a) [N]o motion to modify a custody order may be made earlier than one year after the date of the entry of a decree * * *.

   (b) If a motion for modification has been heard, * * * no subsequent motion may be filed within two years after disposition of the prior motion on its merits.